IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LINCOLN BENEFIT LIFE,<br><br>               Plaintiff,<br><br>vs.<br><br>JAMES W. WILSON,<br><br>               Defendant. | 4:13CV3210<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the court on Defendant James Wilson's Motion for Leave to File Amended Answer, ([Filing No. 93](#)).  For the reasons set forth below, the motion is denied.

BACKGROUND

      Plaintiff Lincoln Benefit Life ("LBL") initiated this action in the District Court of Lancaster County, Nebraska on October 24, 2013.  LBL is a life insurance company which develops and offers life insurance and annuity products to individuals, families and businesses.  Wilson is an independent life insurance producer through whom LBL distributed its life insurance products.[1]

      The complaint alleges Wilson was retained by the shareholders of Lollytogs, Inc. to assist in procuring life insurance coverage on the life of Samuel Gindi, a co-founder of Lollytogs.  Lollytogs decided to purchase level-premium term-life insurance products totaling $29 million in face value and offered through LBL.  Lollytogs intended, and Wilson represented to Lollytogs, that the policies contained provisions that allowed Lollytogs to convert the policies to permanent life insurance products within a certain time period.  This conversion allows the owner to realize significant savings on premiums after the initial level term period.

---

[1] Plaintiff represents its network exceeds 74,000 licensed insurance producers.

Wilson allegedly assured Lollytogs that the policies covering Gindi's life were convertible. However, when Lollytogs requested conversion, LBL denied the request asserting it did not have a contractual obligation to convert the policies based on Gindi's age. Lollytogs sued LBL in New York and received a jury verdict in its favor. While the verdict did not require LBL to convert the policies, it did lower Lollytogs' premium obligation from the unconverted policy level, to the amount Lollytogs would have owed had the policies been converted.

As a result, LBL asserts it incurred damages in excess of $15 million because it did not receive the higher premiums. LBL has, in turn, filed the above-captioned lawsuit against Wilson, alleging Wilson failed to perform his contractual obligation owed to LBL by recommending life insurance policies unsuitable for Lollytogs. LBL asserts claims for breach of contract, indemnity, negligence, and declaratory relief.

Wilson removed the action to this court on December 10, 2013, (Filing No. 1). He filed an answer and counterclaims on January 15, 2014. (Filing No. 17). Wilson's counterclaim alleges LBL breached its contract with Wilson by failing to pay certain commissions owed to Wilson in connection with the Lollytogs policies. The court issued a scheduling letter on January 16, 2014 requiring the parties to fulfill their obligations under Fed. R. Civ. P. 26 and to file a report with the court. On February 13, 2014, Wilson moved for summary judgment seeking dismissal of Plaintiff's complaint and an award of damages on his counterclaim. (Filing No. 20).

The parties filed their Rule 26(f) report on February 18, 2014. (Filing No. 34). At that time, neither party anticipated a need to amend pleadings, but they requested a June 1, 2014 deadline for moving to amend. The court adopted the parties' proposed deadlines, and entered a final progression order on March 3, 2014, which set a June 1, 2014 deadline for filing any motion to amend the pleadings. (Filing No. 35). After

2

several continuances to the briefing schedule, the motion for summary judgment was fully submitted on May 12, 2014, and was denied by order on July 16, 2014, (Filing No. 61). The parties engaged in some written discovery prior to receiving the ruling on Defendant's motion for summary judgment, (Filing Nos. 37, 38, 48 and 49). The parties also twice moved to extend discovery deadlines, but those motions did not include a request to continue the deadline for amending pleadings. (Filing Nos. 60 and 62). Trial is currently set to begin on July 27, 2015. (Filing No. 70).

As early as August 12, 2014, counsel began discussing a possible amendment of Wilson's answer and counterclaim or a stipulation that Wilson believed would obviate the need for an amended pleading. Wilson's counterclaim seeks recovery of commissions he would have received had LBL converted the Lollytogs insurance policies, and he believes a portion of those commissions consist of a percentage of the money LBL would have paid to an insurance brokerage. According to Wilson's attorney, the conversations about a stipulation or proposed amended counterclaim "were triggered by the fact discovery indicating that when Wilson, as a Producing Agent, received commissions from Plaintiff when it sold Plaintiff's product, a portion of those commissions would be paid by LBL to LBL's Master Agent and then subsequently remitted to Wilson." (Filing No. 95, ¶6 at CM/ECF p. 3).

The "Master Agent" referred to by Wilson is apparently an insurance brokerage through which Wilson would have worked to convert the Lollytogs term policies into permanent insurance policies. The brokerage is essentially an intermediary between a producer – like Wilson – and an insurance company – like LBL. The insurance company may authorize the brokerage, through a contractual arrangement, to sell the insurance company's products. A producer may also have a contractual arrangement with various brokerages to market and sell insurance products.

In this case, Wilson asserts he would have used National Insurance Brokerage, Inc. ("NIB") to facilitate the conversion of the Lollytogs LBL term policies had LBL approved of the conversion. According to Wilson, had LBL allowed the conversion of the term life insurance policies Wilson would have been due commissions directly from LBL and, because NIB was one of LBL's Master Agents – i.e., one of its brokerages – LBL would have also paid NIB a commission upon the conversion of the Lollytogs policies. Pursuant to the contract between LBL and NIB, NIB would have also been obligated to pay Wilson a percentage of the commission it received from LBL.

The proposed amendment adds a claim for Breach of Contract alleging Wilson was a third-party beneficiary of the contract between LBL and brokerage/Master Agent NIB and for unjust enrichment because LBL allegedly retained commissions Wilson would have been due directly from LBL and from a brokerage/Master Agent – in this case, NIB. Wilson asserts it did not become "clear" until discovery progressed that a part of his commissions would be governed by a contract and payment schedule between LBL and a third-party brokerage like NIB.

## ANALYSIS

Defendant requests leave to amend its answer and counterclaims after the June 1, 2014 case management deadline set forth in the Final Progression Order. Pursuant to Rule 16(b)(4), a case management order setting progression deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only following a requisite threshold finding of due diligence. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008); Marmo v.

Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006). Where there is "no change in the law, no newly discovered facts, or any other changed circumstance," the court will generally not find good cause to amend.

Here, LBL argues Wilson has failed to make the necessary showing of due diligence required for leave to amend an answer after the June 1, 2014 progression order deadline. Wilson offers two primary arguments in support of his claim of due diligence.

First, Wilson notes that he could not determine the necessity of the motion to amend while his motion for summary judgment was still pending. Because the summary judgment was not ruled upon until July 16, 2014, he argues he could not have met the deadline. The court does not find this argument particularly persuasive. First, the parties, including Wilson, proposed the motion to amend deadline set by the court shortly after Wilson moved for summary judgment. The parties agreed to extensions of the summary judgment briefing schedule, virtually ensuring it would not be ruled upon until after the deadline to amend pleadings passed. Defendant did not promptly seek a deadline extension when it became obvious that the deadline for moving to amend would expire before the parties commenced full discovery. And, as discussed more fully below, Defendant does not specify what information or facts he learned after the summary judgment ruling that he neither knew nor could have known prior to that ruling.

Wilson also asserts he was diligent because he entered discussions with Plaintiff about executing a stipulation regarding the damages calculation that would have rendered the instant motion unnecessary. He states the discussions began as early as August 12, 2014 after he "became aware of the technicalities of how monies are transferred between [LBL], the [brokerage/Master Agent], and himself." (Filing No. 94 at CM/ECF p. 12).

Under the facts presented, these ongoing discussions, which did not even begin until after the amended deadline had passed, do not affect the due diligence analysis.[2]

Finally, Wilson has not explained what compensation information he discovered in August of 2014 that he did not know or could not have discovered before the June 1, 2014 amendment deadline. Although Wilson argues that he did not fully understand how he would be compensated by LBL upon the conversion of the Lollytogs' term policies through a brokerage/Master Agent such as NIB, the court finds this assertion dubious. Wilson is a highly experienced insurance professional, and as affirmed by deponents for both LBL and NIB, the payment arrangement raised in the proposed amended complaint is the "custom and practice" for carriers like LBL. (Filing No. 94 at CM/ECF p. 11). Wilson himself had previously negotiated with NIB to receive his share of a policy conversion commission paid to NIB by an insurance company.[3] (Filing No. 95-5 at CM/ECF p. 13, 42:15-44:15). As such, it appears Wilson either knew or should have known how his commission would be paid if a policy was converted before this lawsuit was even filed. He has failed to show that after June 1, 2014, he discovered any commission payment information that was unknown or unexpected.

Defendant has failed to make a threshold showing of due diligence. As such, the court need not examine whether Defendant will be prejudiced by denial of his proposed amendment, or whether his additional proposed claim fails to state a valid claim for relief. See Sherman, 532 F.3d at 716-17. Accordingly,

---

[2] While it is always the court's preference to have the parties resolve discovery disputes on their own, those discussions must be performed expeditiously. Discussing a proposed stipulation and amendment from August of 2014 until March of 2015 is a excessively prolonged period of time, particularly when the discovery deadline and trial setting are rapidly approaching. While the court appreciates the sincere efforts of counsel to resolve the matter without motion practice, the parties must also discuss the matter with proper urgency so it can be resolved without adversely impacting case progression.

[3] The insurance company at issue in that case was Metropolitan Life.

6

IT IS ORDERED, Defendant's Motion for Leave to Amend, (Filing No. 93), is denied.

Dated this 2nd day of June, 2015

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.