IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| LINCOLN BENEFIT LIFE, | ) | 4:13CV3210 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| JAMES W. WILSON, | ) | AND ORDER |
| Defendant. | ) | |

Plaintiff, Lincoln Benefit, has filed a motion "requesting a ruling on whether Lincoln Benefit's affirmative defenses are precluded by the law of the case doctrine" (Filing No. 194 at CM/ECF p. 2).[1] Nine affirmative defenses are stated in the answer to Defendant's counterclaim, but Lincoln Benefit's motion concludes with a limited request that it be permitted "to proceed to trial on its Second and Fourth Affirmative Defenses" and "[t]o the extent that the Court permits [Defendant] Wilson to pursue attorneys' fees," that it be permitted "to pursue its Sixth and Seventh Affirmative Defenses" (Filing No. 194 at CM/ECF p. 8). Wilson, in responding to the motion, has withdrawn the request for attorneys' fees, so the only disputed issues are whether the Second and Fourth Affirmative Defenses are precluded. However, because Lincoln Benefit's motion discusses all nine affirmative defenses, the court will do the same in order to avoid any confusion or misunderstanding.

Technically, the law-of-the-case doctrine is inapplicable because the court's previous orders (ruling on motions for summary judgment and motions in limine) are not final orders. *See Murphy v. FedEx Nat. LTL, Inc., 618 F.3d 893, 905–06 (8th Cir.2010)* (the law-of-the-case doctrine only applies to final orders, not interlocutory

---

[1] The motion was filed pursuant to an order issued by the court on April 1, 2016 (Filing No. 193), following a conference call with counsel for both parties.

orders such as the denial of a motion for summary judgment); *First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.,* 477 F.3d 616, 620 (8th Cir.2007) (interlocutory orders "can always be reconsidered and modified by a district court prior to entry of a final judgment") (quoting *United States v. Hively,* 437 F.3d 752, 766 (8th Cir. 2006)). But the court understands Lincoln Benefit's motion to be asking whether the affirmative defenses are precluded by the collateral estoppel doctrine, which has served as a basis for the court's previous rulings. With that understanding, the court will now review each of the nine affirmative defenses.

*1. Failure to State a Claim*

Lincoln Benefit first asserts that Wilson "failed to state a claim against Lincoln Benefit upon which relief may properly be granted" (Filing No. 19 at CM/ECF p. 4).[2] In its "motion for ruling on affirmative defenses," however, "Lincoln Benefit concedes that Wilson has alleged sufficient facts to set forth a claim for breach of contract" (Filing No. 194 at CM/ECF p. 3). The court therefore finds that the First Affirmative Defense is withdrawn.

*2. Waiver and Estoppel*

Second, Lincoln Benefit asserts that "Wilson's Counterclaim is barred by the doctrine of waiver and/or estoppel" (Filing No. 19 at CM/ECF p. 4). "Lincoln Benefit maintains that it is permitted to pursue its Second Affirmative Defense based on an explicit contractual provision stating that Wilson forfeits the right to commission under certain circumstances" (Filing No. 194 at CM/ECF p. 3). The provision upon

---

[2] Whether it is proper to plead "failure to state a claim" as an affirmative defense is questionable, *see generally Price v. Woodbury Cty. Jail Adm'r*, No. C 14-4080-MWB, 2015 WL 8677951, at *2-3 (N.D. Iowa Dec. 11, 2015), but it is not necessary to address that question here.

which Lincoln Benefit relies is contained in the 2004 Agent's Agreement. It reads as follows:

> Termination – Either party may terminate this Agreement at any time by giving written notice. Notice may be mailed or delivered to the last known address of the other party. If you reside in, or are licensed in Arkansas, Florida, Illinois, Missouri and/or Oregon, you hereby agree to waive any advance notice of termination and agree that termination will be effective upon delivery of written notice. Upon termination, you shall in no manner thereafter act for LBL and shall promptly account for and remit to LBL any monies then held for it. On demand, you shall turn over to LBL all undelivered policies, rate books, other records, materials, and properties pertaining to your agency business. *Your right to any commission or other thing of value shall cease if you: commit any act that injures the business or reputation of LBL*; fail to account for and remit promptly any monies collected by you for LBL; or withhold any policies, money or other property belonging or returnable to LBL.

(Filing No. 103-4 at CM/ECF p. 11) (emphasis added).

In its complaint, Lincoln Benefit alleges that "Wilson was not entitled to commissions following the judgment in the underlying litigation because his wrongful conduct formed the basis for the plaintiff's claims" and therefore "Wilson was in material breach of his Agent's Agreement" (Filing No. 1-3 at CM/ECF p. 14, ¶ 76). In a memorandum and order entered on December 16, 2015, the court determined that the collateral estoppel doctrine applies to this allegation and ruled that "Plaintiff is precluded from asserting as a defense that Defendant breached the agent's contract in connection with the sale of the term life insurance policies" (Filing No. 154 at CM/ECF p. 30).

Lincoln Benefit seeks to avoid application of the collateral estoppel here by arguing that the "waiver defense is not premised on a claim that Wilson breached his contract. To the contrary, the contract contemplates the possibility that Wilson might engage in conduct that harms Lincoln Benefit's business or reputation, and the

contract sets forth the consequences of such behavior" (Filing No. 194 at CM/ECF pp. 3-4). Lincoln Benefit claims "Wilson should have known that Lincoln Benefit regarded the policies as non-convertible if they were purchased after the insured's 70th birthday," and will seek to establish through expert testimony that "Wilson should not have advised his client that the policies were convertible because such a statement was inaccurate" (Filing No. 194 at CM/ECF p. 4). The expert will testify that Wilson was negligent in "fail[ing] to adhere to the standards expected of a life insurance producer as well as the obligations in his producer's contract with Lincoln Benefit," in "fail[ing] to educate himself regarding the policies' features," and in "fail[ing] to review of [*sic*] the policies prior to delivery" (Filing No. 194 at CM/ECF pp. 4-5). Lincoln Benefit contends "[t]he New York jury was never asked to determine whether Wilson harmed Lincoln Benefit's business or reputation, and the jury's findings cannot be construed as a finding in favor of Wilson on this factual question" (Filing No. 194 at CM/ECF p. 5).[3]

---

[3] In the court's December 16, 2015 memorandum and order, the following findings were made regarding the preclusive effect of the New York jury verdict:

> As a matter of law, the verdict returned by the jury in the New York litigation precludes LBL from claiming that Wilson is liable for any portion of the money judgment the Lollytogs shareholders obtained against it. The jury's first finding [that the Lollytogs shareholders had the right to convert the Term Policies to whole or universal life policies at the time the Term Policies were sold in 1999] was either based upon a determination that the term policies' conversion language is ambiguous, or upon a determination that Wilson was authorized by LBL to sell the policies with conversion rights and that the policies as delivered did not reflect the terms of the sale. The jury's second finding [that the July 13, 2000 Fax from LBL modified the subject Term Policies and gave the Lollytogs shareholders the right to convert the Term Policies to whole or universal life insurance policies through the end of the level premium periods] establishes that to the extent Wilson may have acted without authority, or negligently, LBL ratified the sale of the policies with conversion rights.

Lincoln Benefit's assertion that Wilson "waived" his right to receive a commission because of his alleged negligence in connection with the sale of the term life insurance policies is unsupportable as a matter of law. "Waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right." *Omaha Police Union Local 101, IUPA, AFL-CIO v. City of Omaha*, 872 N.W.2d 765, 773 (Neb. 2015) (citing *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 780 N.W.2d 416 (Neb. 2010)). "To establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part." *Id.* (citing *State ex rel. Wagner v. Amwest Surety Ins. Co.*, 790 N.W.2d 866 (Neb. 2010)). "A party may prove the waiver of a contract by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive." *Id.* (citing *D & S Realty v. Markel Ins. Co.*, 789 N.W.2d 1 (Neb. 2010)).

Lincoln Benefit cannot possibly prove that Wilson manifested an intent to waive his right to receive an additional commission upon conversion of the policies by "advis[ing] his client that the policies were convertible" (Filing No. 194 at CM/ECF p. 4). The so-called "waiver" defense is, in actuality, a claim that Wilson "failed to adhere to the standards expected of a life insurance producer as well as the obligations in his producer's contract with Lincoln Benefit" (Filing No. 194 at CM/ECF p. 4). In other words, Lincoln Benefit is claiming breach of contract.[4] *See*

---

(Filing No. 154 at CM/ECF p. 28).

[4] Wilson notes that Lincoln Benefit has failed to plead with specificity that he breached the "Termination" provision of the Agent's Agreement. This is a pleading deficiency, *see Linscott v. Shasteen*, 847 N.W.2d 283, 292 (Neb. 2014) ("Matters which seek to avoid a valid contract are affirmative defenses."); Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."), but the Eighth Circuit has held that "technical failure to comply with Rule 8(c) is not fatal when the defense is raised in the trial court in a manner that does not result in unfair surprise." *United States ex rel. Kraxberger v. Kansas City*

*Thurston v. Nelson*, 842 N.W.2d 631, 643 (Neb. App. 2014) ("[W]here a plaintiff is suing for breach of a contractual duty which would not have existed but for the contractual relationship, it should be brought as a breach of contract action and not as a tort claim.").

In summary, consistent with the court's previous holding that "Plaintiff is precluded from asserting as a defense that Defendant breached the agent's contract in connection with the sale of the term life insurance policies" (Filing No. 154 at CM/ECF p. 30), the court finds that Lincoln Benefit's Second Affirmative Defense is precluded by the collateral estoppel doctrine.[5]

*3. Negligence*

Third, Lincoln Benefit asserts that "Wilson's Counterclaim is barred by his own contributory negligence and/or negligence" (Filing No. 19 at CM/ECF p. 5). However, Lincoln Benefit now states it "understands that this affirmative defense is barred by the collateral estoppel ruling" (Filing No. 194 at CM/ECF p. 5). In making this statement, Lincoln Benefit references the court's ruling in the December 16, 2015 memorandum and order that "[t]he [New York] jury's second finding establishes that to the extent Wilson may have acted without authority, or negligently, LBL ratified the sale of the polices with conversion rights" (Filing No. 154 at CM/ECF p. 28). The court also ruled on March 24, 2016, in granting a motion in limine filed by Wilson, that "Plaintiff cannot offer evidence that Defendant breached the agent's agreement

---

*Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014) (internal quotations and citations omitted). One month's notice has been held sufficient to preclude unfair surprise. *See id.* (citing *First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 623 (8th Cir. 2007)).

[5] Even if this affirmative defense were not precluded, Lincoln Benefit has never claimed that the Agent's Agreement was terminated, which is a condition precedent to cessation of the agent's right to a commission under the "Termination" clause.

or was negligent in the placement of insurance for Lollytogs with Plaintiff" (Filing No. 191 at CM/ECF p. 2). Consistent with those rulings, the court finds that Lincoln Benefit's Third Affirmative Defense is precluded by the collateral estoppel doctrine.

*4. Failure of consideration*

Fourth, Lincoln Benefit asserts that "Wilson's Counterclaim is barred by a failure of consideration" (Filing No. 19 at CM/ECF p. 5). "Lincoln Benefit contends that the collateral estoppel ruling does not preclude Lincoln Benefit's Fourth Affirmative Defense, and Lincoln Benefit intends to pursue this defense at trial" (Filing No. 194 at CM/ECF p. 5).

Failure of consideration is an affirmative defense. *Schuelke v. Wilson*, 587 N.W.2d 369, 374 (Neb. 1998). Failure of consideration occurs where, inter alia, the purpose of the parties' agreement or contract wholly fails. *Id.* at 376.[6]

---

[6] As further explained in Corpus Juris Secundum:

A failure of consideration occurs whenever one who has promised to give some performance fails to receive, in some material respect and without his or her fault, the agreed quid pro quo for that performance. It involves the neglect, refusal, and failure of one contracting party to do, perform, or furnish, after making and entering into the contract, the consideration in substance and in fact agreed on.

... Failure of consideration, an affirmative defense, occurs when, because of some supervening cause after a contract is formed, the promised performance fails. The phrase "failure of consideration" is a misnomer, as a party asserting the defense of failure of consideration is not really arguing that the contract lacks the necessary bargained for exchange; rather, the party contends that his or her adversary has failed to perform his or her obligation under the contract, and if the breach or failure to perform goes to the essence of the agreement, the adversary cannot sue to enforce the contract.

Lincoln Benefit states that its expert and other witnesses will testify that "the sale of a life insurance policy typically involves meeting with the client, reviewing the client's particular needs, surveying the market for available products, completing an application, and ultimately delivering a new policy to the client" (Filing No. 194 at CM/ECF p. 6). Lincoln Benefit denies that Wilson "automatically would have been entitled to a commission if Lincoln Benefit had allowed conversion" of the term policies in 2007, and claims that a "[c]ommission is paid to the producer who actually works with the client to select an insurance policy and complete the application process" (Filing No. 194 at CM/ECF p. 6). Lincoln Benefit contends it dealt directly with Stephen Carb, the Lollytogs trustee, between May and November, 2007, and "[t]here is no evidence that Wilson did anything to assist Mr. Carb or the policy owner during this time" (Filing No. 194 at CM/ECF p. 6).

In response, Wilson acknowledges that "Plaintiff is correct that commissions constitute compensation paid for the producers work in connection with the sale of life insurance policies" and "that the sale of a life insurance policy typically involves meeting with the client, reviewing the client's particular needs, surveying the market for available products, completing an application, and ultimately delivering a new policy to the client" (Filing No. 195 at CM/ECF p. 16). Wilson does not assert that he "automatically" would have received a commission if Lincoln Benefit had allowed the term policies to be converted to universal life or whole life policies in 2007, but instead takes the position that "the response given to Mr. Carb, to wit, LBL's claim that the Subject Term Policies had no conversion rights, ... stopp[ed] Lollytogs and Wilson in their tracks from pursuing conversion of policies" (Filing No. 195 at CM/ECF p. 17). Wilson also maintains that he continued to act as Lollytogs' agent and disputes that Mr. Carb could have converted the policies without his assistance because "LBL created a system where all conversions were to proceed through its agents and or Special Agents and not directly with the insured" (Filing No. 195 at CM/ECF p. 18 n. 51).

---

17 C.J.S. Contracts § 164 (footnotes omitted).

The court has ruled, in granting a motion in limine filed by Wilson, that certain alleged conditions precedent to Wilson's right to receive additional commissions, including an exchange of the term polices for new policies, Lincoln Benefit's receipt of premiums on the converted policies, and Lincoln Benefits' receipt of an application for the converted policies (see Filing No. 187 at CM/ECF p. 4), were excused as a matter of law (Filing No. 191 at CM/ECF p. 2). The court now reaffirms that ruling insofar as Lincoln Benefit claims that there was a failure of consideration because these conditions were not satisfied.

The 2004 Agent's Agreement contains the following provisions regarding commissions and service fees:

> Compensation – Your compensation shall be based on your personal production and the production of all agents assigned to you. You shall be compensated according to the Schedule of Commissions, as amended from time to time, for premiums received on policies issued by LBL for applications secured under this Agreement. Payment of commissions and service fees shall be made at such times and in the manner LBL considers appropriate for the efficient administration of this Agreement. The Schedule of Commissions is subject to change by LBL, but any change shall not apply to business written prior to the effective date of the change. The statements issued by LBL concerning agent's commissions and service fees paid and/or payable, advances, and indebtedness shall be conclusive unless, within thirty (30) days following receipt of the statement, you notify LBL of a dispute regarding any transactions reported on that statement. If a policy on which you are receiving commission or service fees lapses for any reason, no further commission or service fees will be paid to you unless the policy is reinstated solely due to your actions. If, for any reason, LBL refunds any premium on which you received a commission or service fee, you shall immediately repay to LBL the commission or service fee received on such premium.
>
> Vesting – Your right to commissions shall be deemed fully vested, and except as specifically limited to herein, the renewal commissions shall be paid for the term and in the amount shown in the Schedule of

>Commissions. Your right to receive service fees shall continue so long as this Agreement is in force. Following termination of this Agreement for any reason, the amount shown as service fees in the Schedule of Commissions may be reduced by one-half.

(Filing No. 103-4 at CM/ECF p. 8).

"Replacement Rules" attached to the Schedule of Commissions "address (1) whether any surrender charge may be assessed to the policyholder and (2) whether any commissions may be paid on the new policy" (Filing No. 103-4 at CM/ECF p. 20). "A replacement occurs whenever an existing policy or contract is terminated, converted, or otherwise changed in value" (Filing No. 103-4 at CM/ECF p. 7). With respect to "term conversions," the Replacement Rules provide:

>If a Term plan is exchanged for a universal life or whole life policy within the first ten years, full first year commissions will be paid on the premium actually paid by the policy owner up to the target number premium reduced by the conversion allowance, if any. If the exchange occurs more than ten years after issue, all premiums for the new policy will be commissioned at the renewal rate.

(Filing No. 103-4 at CM/ECF p. 21).

Assuming, without deciding, that Lincoln Benefit is correct in its assertion that Wilson's right to receive commissions for conversion of the term policies to universal life or whole life policies was not "automatic," such that a failure of consideration could defeat Wilson's right to commissions for conversion of the policies, the court finds that Lincoln Benefit's Fourth Affirmative Defense is not precluded by the collateral estoppel doctrine. That being said, however, Lincoln Benefit cannot claim there was a failure of consideration because Wilson was negligent (or breached the Agent's Agreement) in connection with the sale of the term life policies, or because Wilson failed to satisfy a condition precedent which was excused as a matter of law as a result of Lincoln Benefit's wrongful refusal to convert the policies to universal or whole life policies.

-10-

*5. Fraud*

Fifth, Lincoln Benefit asserts that "Wilson's Counterclaim may be barred as a result of fraud" (Filing No. 19 at CM/ECF p. 5). Lincoln Benefit states that while it "does not believe this affirmative defense is barred by the collateral estoppel ruling," it "does not intend to pursue this defense at trial" (Filing No. 194 at CM/ECF p. 6). Because Lincoln Benefit was withdrawn this affirmative defense, the court need not decide whether it is precluded.

*6. Plaintiff's Good Faith*

Sixth, Lincoln Benefit asserts that it "acted in good faith at all times relevant hereto" (Filing No. 19 at CM/ECF p. 5). Lincoln Benefit states it "does not believe this affirmative defense is precluded by the collateral estoppel ruling," but indicates the defense was only asserted "in response to Wilson's claim for attorneys' fees" (Filing No. 194 at CM/ECF p. 7). Wilson responds that he "withdraws [his] claim for attorneys' fees," (Filing No. 195 at CM/ECF p. 18), thereby rendering the issue moot.

*7. No Claim for Attorney Fees*

Seventh, Lincoln Benefit asserts that "Wilson has failed to state a claim upon which attorneys' fees can be awarded." (Filing No. 19 at CM/ECF p. 5). Wilson's withdrawal of his claim for attorneys' fees also makes it unnecessary to decide whether this defense is precluded.

*8. Unclean Hands*

Eighth, Lincoln Benefit asserts that "Wilson's Counterclaim is barred by the doctrine of unclean hands" (Filing No. 19 at CM/ECF p. 5). "Lincoln Benefit does not believe this affirmative defense is precluded by the collateral estoppel ruling, but, for the reasons expressed in connection with Lincoln Benefit's Second Affirmative

-11-

Defense, Lincoln Benefit would pursue this defense at trial if the Court deems Wilson's claim for declaratory relief to be equitable in nature" (Filing No. 194 at CM/ECF p. 7). Because the court has determined that Lincoln Benefit's Second Affirmative Defense is precluded, no further discussion is necessary.

*9. Judicial Estoppel*

Finally, Lincoln Benefit asserts that "Wilson's Counterclaim is barred by the doctrine of judicial estoppel" (Filing No. 19 at CM/ECF p. 5).[7] "Lincoln Benefit does not believe this claim is precluded by the collateral order ruling, but ... it is precluded by the previous motion in limine ruling, in which the Court concluded that certain conditions precedent were established as a matter of law" (Filing No. 194 at CM/ECF p. 7). Lincoln Benefit references the memorandum and order entered on March 24, 2016, wherein the court sustained Wilson's second motion in limine (Filing No. 165) after finding that the alleged "conditions were excused as a matter of law" (Filing No. 191 at CM/ECF p. 2). The court has reaffirmed that ruling in its discussing the Fourth Affirmative Defense above. Because Lincoln Benefit concedes that the ruling also applies here, the courts finds that Lincoln Benefit's Ninth Affirmative Defense is precluded by the collateral estoppel doctrine.

Accordingly,

IT IS ORDERED with reference to Plaintiff's "motion for ruling on affirmative defenses" (Filing No. 194) that:

---

[7] "Judicial estoppel is an equitable doctrine which 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001)). It is unclear why Lincoln Benefit claims the doctrine would apply here.

1. Plaintiff's First Affirmative Defense (of failure to state a claim) is withdrawn.

2. Plaintiff's Second Affirmative Defense (of waiver and estoppel, or breach of contract) is precluded.

3. Plaintiff's Third Affirmative Defense (of negligence) is precluded.

4. Plaintiff's Fourth Affirmative Defense (of failure of consideration) is not precluded except to the extent stated in the foregoing memorandum.

5. Plaintiff's Fifth Affirmative Defense (of fraud) is withdrawn.

6. Plaintiff's Sixth Affirmative Defense (of Plaintiff's good faith) is moot.

7. Plaintiff's Seventh Affirmative Defense (of no claim for attorneys' fees) is moot.

8. Plaintiff's Eighth Affirmative Defense (of unclean hands) is precluded.

9. Plaintiff's Ninth Affirmative Defense (of judicial estoppel) is precluded.

DATED this 11th day of May, 2016.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge