IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINCOLN BENEFIT LIFE, | ) | 4:13CV3210 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| JAMES W. WILSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

  This matter is before the court on Defendant's Rule 50 motion for judgment as a matter of law at the close of all the evidence. The motion will be granted and judgment will be entered awarding Defendant damages for unpaid commissions and bonuses.

  In a Rule 50 motion for judgment as a matter of law, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1025 (8th Cir. 2000). " Rule 50(a) allows the judge in a jury trial to enter judgment against a party with respect to a claim or defense 'that cannot under the controlling law be maintained or defeated without a favorable finding on that issue,' when the party has been fully heard on the issue and 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue.'" *Id.* (quoting Fed.R.Civ.P. 50(a)). The court must view the evidence in the light most favorable to the nonmoving party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. *Id.* The court should grant judgment as a matter of law only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party. *Id.* Nevertheless, even under this exacting standard, the nonmoving party is only entitled to the benefit of *reasonable* inferences. *Id.* (emphasis added). A reasonable inference is one which may be drawn from the evidence without resort to speculation. *Id.* When

the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate. *Id.*

There is no dispute that the question of Plaintiff's liability on Defendant's counterclaim for commission payments hinges upon the meaning of the following provision of the 2004 Agent's Agreement:

> **Compensation** – Your compensation shall be based on your personal production and the production of all agents assigned to you. You shall be compensated according to the Schedule of Commissions, as amended from time to time, for premiums received on policies issued by LBL for applications secured under this Agreement. Payment of commissions and service fees shall be made at such times and in the manner LBL considers appropriate for the efficient administration of this Agreement. The Schedule of Commissions is subject to change by LBL, but any change shall not apply to business written prior to the effective date of the change. The statements issued by LBL concerning agent's commissions and service fees paid and/or payable, advances and indebtedness shall be conclusive unless, within thirty (30) days following receipt of the statement, you notify LBL of a dispute regarding any transactions reported on that statement. If a policy on which you are receiving commission or service fees lapses for any reason, no further commission or service fees will be paid to you unless the policy is reinstated solely due to your actions. If, for any reason, LBL refunds any premium on which you received a commission or service fee, you shall immediately repay to LBL the commission or service fee received on such premium.

(Defendant's Exhibit 205, p. 4). It is also undisputed that an applicable provision of the Schedule of Commissions states:

> Term conversions. If a Term plan is exchanged for a universal life or whole life policy within the first ten years, full first year commissions will be paid on the premium actually paid by the policy owner up to the target premium reduced by the conversion allowance, if any. If the exchange occurs more than ten years after issue, all premiums for the new policy will be commissioned at the renewal rate.

(Defendant's Exhibit 205, p. 17).

Plaintiff (LBL) contends Defendant (Wilson) is not entitled to payment of commissions for conversion of the term policies to universal life or whole life policies because he did not "produce" the universal life or whole life policies. I disagree and conclude as a matter of law that the Agreement unambiguously provides[1] that Wilson is entitled to payment of commissions for conversion of the term policies that he sold to the Lollytogs shareholders; no further actions were required on Wilson's part to "produce" universal life or whole life policies in order to earn commissions. Because the term policies Wilson produced in 1999 contained enforceable conversion provisions, Wilson became entitled to payment of commissions after the policyholders exercised their conversion rights.

Secondly, and even accepting LBL's interpretation of the agreement, it has been proven, and no reasonable jury could conclude otherwise, that Wilson acted as the policyholder's insurance agent, as required by his agreement with LBL, at all relevant times and was actively involved in the policyholder's communications with LBL regarding conversion rights. For example, he advised the shareholders groups and the trustee who owned the policies how he thought they should proceed in securing the conversion. Even more specifically, he commented upon and gave his advice regarding a letter drafted by counsel for signature by the trustee seeking confirmation of conversion rights and suggested various changes to the letter (Exhibit 210). In short, Wilson "produced" the conversions within the meaning of his agreement with LBL.

Thirdly, and even if I were to accept LBL's interpretation of the Agreement, the evidence conclusively establishes that LBL effectively prevented Wilson from doing anything more to "produce" the universal life or whole life policies because it

---

[1] To the extent there is any ambiguity, the Agreement is construed against the drafter, that is, LBL.

took the position in 2007 that the conversion provisions in the term policies he sold to the Lollytogs shareholders were inapplicable due to the insured's age. The policyholders were forced to sue LBL in 2009 to enforce their conversion rights. I have previously ruled that because of the outcome of that lawsuit, LBL is collaterally estopped from claiming that Wilson breached the Agreement and have also ruled that certain conditions precedent for conversion (including submission of applications, receipt of premiums, and exchanges of policies) were excused as a matter of law. After hearing the evidence, LBL's evidence is not sufficient to create a triable issue of fact regarding Wilson's performance.

In sum, Wilson proved a breach of contract and damages and no reasonable jury could conclude otherwise. In that same vein, LBL's affirmative defense of lack of consideration fails as a matter of law and also because no reasonable jury could conclude that there was a lack of or failure of consideration.

The parties have stipulated that if Wilson prevails on his counterclaim, he is entitled to payment of $970,778.39 in commissions. It is undisputed that if Wilson is entitled to a commission, he is also entitled to receive a bonus under a program established by LBL. (See Defendant's Exhibit 223.) The parties have stipulated that the amount of the bonus in this case is $120,000.00.

Finally, I find that Wilson's claims are liquidated because there is no reasonable controversy either as to the amounts due or as to his right to recover, and that prejudgment interest therefore is recoverable under Neb. Rev. Stat. § 45-104[2]. The amount of prejudgment interest calculated pursuant to this statute, based on a total sum of $1,090,778.39 ($970,778.39 + $120,000.00), from April 30, 2013, to date, is $484,245.00.

Accordingly,

---

[2] It is undisputed that Nebraska law governs.

IT IS ORDERED that Defendant's motion for judgment as a matter of law is granted, and judgment will be entered by separate document generally providing that Defendant will recover from Plaintiff the sum of $1,575,023.39 plus taxable costs.

DATED this 11th day of January, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge